UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

TURHAN TAYLOR,

Plaintiff,

v.

CORRECTIONS CORPORATION OF AMERICA, JACOBS TRADING COMPANY, TIMOTHY O'DELL, STEPHEN KAISER, JOHN RICHES, JOHN BERGER, JON LITSCHER, PAUL TAFT and CAROLYN KLUCAS,

Defendants.

Civil File No. 01-2131 (MJD/AJB)

**REPORT AND RECOMMENDATION**

Plaintiff, a prisoner of the State of Wisconsin, claims that he was wrongly deprived of certain wages that he earned from working in a prison industries program at the Prairie Correctional Facility, ("PCF"), in Appleton, Minnesota. He is attempting to sue the Corrections Corporation of America, ("CCA"), a private corporation that owns and operates PCF, as well as Jacobs Trading Company, his employer at PCF. Plaintiff is also attempting to sue several individual CCA employees, and the Secretary of the Wisconsin Department of Corrections, Jon Litscher.

Defendant Litscher has filed a motion pursuant to Fed. R. Civ. P. 12(b)(6), (Docket No. 55), contending that this action should be summarily dismissed because Plaintiff's amended complaint[1] fails to state a cause of action on which relief can be granted. Defendant Litscher is also seeking sanctions pursuant to Fed. R. Civ. P. 11. The remaining

[1] With the Court's permission, Plaintiff amended his original pleading. Thus, the matter is presently before the Court for consideration of Plaintiff's amended complaint. (Docket No. 54.)

FILED SEP 2 2 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

Defendants have filed a separate motion to dismiss, or in the alternative, for summary judgment. (Docket No. 59.) Plaintiff has filed briefs opposing Defendants' motions to dismiss, (Docket Nos. 65 and 70), and he has also filed his own motions asking that Defendants' motions be denied, (Docket Nos. 64 and 69).

This matter has been referred to the undersigned Magistrate Judge of the District Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it will be recommended that Defendants' motions to dismiss be granted, that Defendant Litscher's request for sanctions be denied, that Plaintiff's motions be denied, and that this action be DISMISSED WITH PREJUDICE.

## I. BACKGROUND[2]

Sometime near the end of 1999, Plaintiff was transferred from a Wisconsin state prison to PCF. In July of 2000, he was given an opportunity to work for Defendant Jacobs Trading Company, a business enterprise that employed PCF inmates as part of a prison industry program operated pursuant to 18 U.S.C. 1761.[3]

---

[2] For purposes of resolving the pending motions, the Court must accept the factual allegations set forth in Plaintiff's pleading. (See "Standard of Review," pp. 7-8, infra.) Therefore, the following summary of the background of this case is based on the facts alleged in the amended complaint.

[3] Section 1761 is the codified form of the law known as the Ashurst-Sumners Act, which is supposed to protect American businesses from unfair trade competition that might otherwise result from the use of inexpensive prison labor. The statute reads as follows:

> **Transportation or importation**
>
> **(a)** Whoever knowingly transports in interstate commerce or from any foreign country into the United States any goods, wares, or merchandise manufactured, produced, or mined, wholly or in part by convicts or prisoners, except convicts or prisoners on parole, supervised release, or probation, or in any penal or reformatory institution, shall be fined under this title or

---

imprisoned not more than two years, or both.

**(b)** This chapter shall not apply to agricultural commodities or parts for the repair of farm machinery, nor to commodities manufactured in a Federal, District of Columbia, or State institution for use by the Federal Government, or by the District of Columbia, or by any State or Political subdivision of a State or not-for-profit organizations.

**(c)** In addition to the exceptions set forth in subsection (b) of this section, this chapter shall not apply to goods, wares, or merchandise manufactured, produced, or mined by convicts or prisoners who --

> **(1)** are participating in--one of not more than 50 non-Federal prison work pilot projects designated by the Director of the Bureau of Justice Assistance;
>
> **(2)** have, in connection with such work, received wages at a rate which is not less than that paid for work of a similar nature in the locality in which the work was performed, except that such wages may be subject to deductions which shall not, in the aggregate, exceed 80 per centum of gross wages, and shall be limited as follows:
>
> > **(A)** taxes (Federal, State, local);
> > **(B)** reasonable charges for room and board, as determined by regulations issued by the chief State correctional officer, in the case of a State prisoner;
> > **(C)** allocations for support of family pursuant to State statute, court order, or agreement by the offender;
> > **(D)** contributions to any fund established by law to compensate the victims of crime of not more than 20 per centum but not less than 5 per centum of gross wages;
>
> **(3)** have not solely by their status as offenders, been deprived of the right to participate in benefits made available by the Federal or State Government to other individuals on the basis of their employment, such as workmen's compensation. However, such convicts or prisoners shall not be qualified to receive any payments for unemployment compensation while incarcerated, notwithstanding any other provision of the law to the contrary; and

Plaintiff accepted the opportunity to work for Jacobs Trading Company, and signed a written agreement outlining the basic terms of his employment. By signing that agreement, Plaintiff acknowledged that his gross wages would be subject to various deductions for taxes, family support payments, a crime victims' compensation fund, and the costs of his room and board while in prison. (See 28 U.S.C. § 1761(c)(2), quoted at n. 3, supra.) The agreement did not specify the exact amount that would be deducted from Plaintiff's paychecks, but it did specifically indicate that the aggregate amount of such deductions could be as much as 80%. (See id.)

Plaintiff worked for Jacobs Trading Company from July 27, 2000, until March 3, 2001. During that time he received nine earning statements, which listed the various deductions taken from his wages. Each statement showed a deduction for room and board equal to 50% of his gross wages, and a deduction for a crime victims' compensation fund equal to 5% of his gross wages.

When Plaintiff first started working for Jacobs Trading Company, the deductions from his wages for room and board expenses had not yet been formally approved by the Wisconsin Department of Corrections, as required by federal guidelines.[4] However, on

---

> **(4)** have participated in such employment voluntarily and have agreed in advance to the specific deductions made from gross wages pursuant to this section, and all other financial arrangements as a result of participation in such employment.

> **(d)** For the purposes of this section, the term "State" means a State of the United States and any commonwealth, territory, or possession of the United States.

[4] The guidelines governing the "Prison Industry Enhancement Certification Program," ("PIECP"), established pursuant to § 1761, were published in the Federal Register, ("FR"), on April 7, 1999, commencing at p. 17000. (64 FR 17000 et seq.) The

September 1, 2000, Defendant Litscher sent a letter to PCF which confirmed that Wisconsin prisoners could be employed in PCF's prison industry programs, and that their wages could be subject to legally authorized deductions. (A copy of Litscher's letter is included in the exhibits that Plaintiff submitted in support of his original complaint. [Docket No. 2].) Litscher's letter did not place any limit on the amount of the room and board deduction, but instead gave PCF's Warden, Defendant Timothy O'Dell, the authority to set the deduction amount. Thereafter, PCF continued to deduct 50% of Plaintiff's wages for room and board expenses, which meant, in effect, that Litscher's letter simply ratified PCF's existing deduction practice.

In November 2000, Plaintiff learned that he and other Wisconsin prisoners at PCF were being treated differently from prisoners of the State of Hawaii who also were incarcerated at PCF. The room and board deduction for the Hawaiian prisoners employed by Jacobs Trading Company was only 20% of gross wages -- far less than the 50% deduction applied to Wisconsin employees.

On January 19, 2001, Plaintiff was told that he had been fired from his job because of unexcused absences. When Plaintiff complained to prison officials about his termination, they conducted an investigation and determined that his absences from work had, in fact, been properly excused. After the mistake was discovered, Plaintiff's employment was immediately reinstated. He missed a total of four days of work as a result of that incident,

---

section of the guidelines that requires private prisons to obtain written approval for room and board deductions "from their respective public agency clients" (i.e., from each state's department of corrections), is § 8 (64 FR at 17006). Plaintiff included a copy of the guidelines with the exhibits that he filed in support of his original complaint. (Docket No. 2.)

and he received no pay for those days.

When Plaintiff learned about the deduction disparity between Wisconsin prisoners and Hawaiian prisoners, he began to complain about it by filing written grievances pursuant to PCF's administrative remedies procedures. Those administrative grievances did not bring about any changes to PCF's wage deduction practices, however, so Plaintiff decided to sue.

He now claims that:

(i) the deductions from his wages for room and board expenses were illegal (and should therefore be returned to him) because Defendants did not comply with 18 U.S.C. § 1761 and various federal regulations implementing that statute;

(ii) his constitutional right to equal protection was violated, because the wage deductions for his room and board expenses were greater than the room and board deductions for Hawaiian prisoners; and

(iii) he was denied due process when he was prohibited from working for four days in January 2001.

Plaintiff is seeking compensatory damages for the allegedly improper deductions from his wages, and for the wages that he lost during the four days that he was not allowed to work in January 2001. He is also asking for an award of punitive damages, (for reasons not explained in his pleading).[5]

---

[5] Plaintiff's amended complaint also includes several demands for prospective relief, (declaratory judgments and injunctions), that would change various practices and procedures at PCF. All of Plaintiff's demands for prospective relief -- including his demands for a "grievance system" -- are now moot, however, because he is no longer incarcerated

## II. STANDARD OF REVIEW

Defendants' motions to dismiss Plaintiff's complaint are brought under Fed. R. Civ. P. 12(b)(6). A complaint will be dismissed pursuant to that Rule "'if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations'" that have been pleaded. Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995), quoting Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993) and Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In assessing a motion brought under Rule 12(b)(6), a court must liberally construe a pro se complaint. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). The court must "review the complaint most favorably to the non-moving party," bearing in mind that "[c]ivil rights pleadings should be construed liberally." Frey, 44 F.3d at 671. The complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Holloway v. Lockhart, 792 F.2d 760, 761-62 (8th Cir. 1986).

The court also "must presume that the factual allegations of the complaint are true and accord all reasonable inferences from those facts to the non-moving party." Id.; see also Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). This does not mean, however, that the court must accept the legal conclusions set forth in the plaintiff's complaint. Westcott v.

---

at PCF, and there is no indication that he is expected to return. See Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (prisoner claims for injunctive relief rendered moot by transfer to a different institution); Hickman v. Missouri, 144 F.3d 1141, 1142 (8th Cir. 1998) (§ 1983 claims for injunctive relief based on prison conditions are rendered moot by inmate-plaintiff's release from prison); Randolph v. Rodgers, 253 F.3d 342, 344-46 (8th Cir. 2001) (dismissing prisoner's claims for injunctive relief against prison officials where the prisoner was no longer residing at the penal facility where those prison officials worked).

City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990) (the court does not "blindly accept the legal conclusions drawn by the pleader from the facts"). Conclusory allegations -- that is, allegations that are simply legal conclusions unsupported by specific factual allegations -- are not sufficient to state an actionable claim for relief. Frey, 44 F.3d at 671 ("[a]t the very least... the complaint must contain facts which state a claim as a matter of law and must not be conclusory"); Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) (although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law").

Under Rule 12(b)(6), the court is not to rely on material outside the complaint unless the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Although some materials outside of the pleadings have been submitted in this case, the Court finds that Defendants' pending motions can be fully resolved by examining only the amended complaint itself. Because Defendants' motions can be (and will be) decided without resorting to any of the various evidentiary materials submitted by the parties, those motions will not be treated as motions for summary judgment. For the reasons discussed below, the Court finds that even if all of the factual allegations in the amended complaint are assumed to be true, Plaintiff has not stated a cause of action on which relief can be granted.

## III. DISCUSSION

### A. Claims Based On 18 U.S.C. § 1761

Plaintiff initially claims that the deductions from his wages for room and board expenses were illegal under 18 U.S.C. § 1761 and various regulations implementing the provisions of that statute, and that he should therefore be reimbursed for those deductions.

He contends that Defendants violated § 1761 and the implementing regulations in several respects. In particular, he argues, Defendants did not follow the mandated procedures for taking room and board deductions from prisoner wages. He further argues that his employment was not truly "voluntary," (and that it was therefore illegal under § 1761 and the implementing regulations), because (a) he was not adequately informed about the specific amount of the room and board deduction, and (b) he was not informed that Hawaiian prisoners would have a smaller room and board deduction.

None of Plaintiff's claims based directly or indirectly on § 1761 or the implementing regulations is legally cognizable, however, because that statute creates no private right of action for the benefit of prisoners. Our Court of Appeals has expressly determined that the legal responsibilities created by § 1761 do not give rise to any legal rights enforceable by prisoners. McMaster v. State of Minnesota, 30 F.3d 976, 981 (8th Cir. 1994), cert. denied, 513 U.S. 1157 (1995). The Court of Appeals has concluded that § 1761 was enacted "to protect private business, not to protect the inmate worker." Id. Therefore, the statute "does not provide a private cause of action [for prisoners], either expressly or by implication." Id. at 981-82. Nor does the statute create any "federal right enforceable by way of 42 U.S.C. § 1983." Id. at 982.[6]

The holding of McMaster could not be more clear. Prisoners simply have no legal rights under § 1761, and they cannot maintain any claim based directly or indirectly on that statute. Therefore, to the extent that Plaintiff is seeking redress based on that statute or

---

[6] The reasoning that supports the holding of McMaster is discussed in the District Court's opinion in the case, which is published at McMaster v. State of Minnesota, 819 F.Supp. 1429, 1439-41 (D.Minn. 1993) (MacLaughlin, J.).

the regulations implementing it, he has failed to state a claim on which relief can be granted.

B. Equal Protection Claim

Plaintiff further claims that his constitutional right to equal protection was violated during the course of his employment at PCF, because the room and board deduction for Hawaiian prisoners was smaller than the deduction for Wisconsin prisoners. As previously noted, Wisconsin prisoners (including Plaintiff) were subject to a 50% room and board deduction, while the deduction for Hawaiian prisoners was only 20%.

To sustain his equal protection claim, Plaintiff must show that he belonged to a group that was treated less favorably than others who were "similarly situated." Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994), cert. denied, 513 U.S. 1185 (1995). Plaintiff obviously believes that he did belong to a group (namely the Wisconsin prisoners at PCF) that was treated less favorably than others who were similarly situated, (namely the Hawaiian prisoners at PCF). Defendants contend that the Wisconsin prisoners and the Hawaiian prisoners were not similarly situated for equal protection purposes, and Plaintiff therefore has no equal protection claim. The Court agrees with Defendants.

The Hawaiian inmates at PCF had little in common with the Wisconsin inmates, aside from the fact that they were sent to the same out-of-state private prison. The inmates from each state remained subject to the laws and regulations of the state in which they were convicted. The Hawaii Department of Corrections was ultimately responsible for the care and custody of the Hawaiian inmates, while the Wisconsin Department of Corrections was ultimately responsible for the Wisconsin inmates. Each state had its own separate contract with CCA, and those contracts presumably included different terms and conditions

for housing inmates at PCF. Because the Wisconsin prisoners and the Hawaiian prisoners were subject to different state laws, they were under the control of different state correctional departments, and they were housed at PCF pursuant to different contracts, they cannot be considered to be "similarly situated" for equal protection purposes.

Plaintiff's equal protection claim might be more plausible if CCA (or its subordinates or affiliates) had independently decided to treat Wisconsin's prisoners differently from Hawaii's prisoners. But there is nothing in Plaintiff's pleading, or elsewhere in the record, which suggests that was the case. To the contrary, it clearly appears that state officials – not CCA officials -- had the ultimate authority to control how the room and board deduction would be assessed. Hawaii's prison officials decided to impose a 20% cap on the deduction, while Wisconsin's prison officials decided to let CCA set the deduction. Plaintiff cannot claim that his equal protection rights were violated simply because Wisconsin treated its prisoners differently than Hawaii treated its prisoners.

C. Termination Of Employment Claim

Finally, Plaintiff claims that his federal constitutional rights were violated because he was prohibited from going to work for four days in January 2001, without first being afforded the protections of due process. This claim fails because Plaintiff had no constitutionally protected interest in retaining his employment.

To maintain an actionable due process claim, a prisoner must allege, (and ultimately prove), that he has been deprived of some constitutionally protected interest. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"). A constitutionally protected interest will be found, and the protections of due process will therefore come into play, only when

a prisoner has shown the type of unusual hardship or dramatic departure from ordinary prison life that is contemplated in Sandin v. Conner, 515 U.S. 472 (1995). In Sandin, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. Our Court of Appeals has interpreted Sandin to mean that prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996) (emphasis added.)

Plaintiff's amended complaint does not state an actionable due process claim because there are no factual allegations suggesting that he was subjected to the type of severe hardship that Sandin requires. The only relevant "hardship" in this case is Plaintiff's loss of his prison industries job for four days. However, the loss of a prison job (even permanently -- let alone for only four days) does not constitute the type of dramatic departure from the ordinary conditions of prison life that was contemplated by the Supreme Court in Sandin.

While Plaintiff may have been disappointed to lose his job for four days, he has not suffered the type of serious hardship needed for a viable due process claim. Prisoners are frequently denied employment opportunities for many different reasons, and such events are not considered to be an "atypical and significant hardship" or a "dramatic departure" from the ordinary conditions of a prison sentence. Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669-70 (8th Cir. 1996); Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997); Dominque v. Weld, 73 F.3d 1156, 1161 (1st Cir. 1996); Bulger v.

United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995). See also Burton v. Evans, No. 01 C 3328 (N.D.Ill. May 2, 2002) 2002 WL 832590 at *5 ("[a] prisoner's interest in having a job is not protected as a liberty interest by the Due Process Clause").

Plaintiff seems to think that he could not be deprived of his prison industries job without being afforded the protections of due process, because his job was created under, and regulated by, various laws and prison policies. According to Sandin, however, such reasoning must be rejected. As the Tenth Circuit Court of Appeals has clearly and succinctly explained, "prison regulations entitling prisoners to work do not create a constitutional liberty interest because a denial of employment opportunities to an inmate does not impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Penrod v. Zavaras, 94 F.3d 1399, 1407 (10th Cir. 1996), quoting Sandin, 515 U.S. at 484. This ruling applies here.

In sum, under the Sandin test, Plaintiff had no constitutionally protected interest in retaining his prison industries job. He therefore cannot maintain a due process claim based on the four-day loss of his job.

## IV. CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiff's amended complaint fails to state any cause of action on which relief may be granted. The Court further concludes that Plaintiff could not cure the defects in his pleading by amending it to add more factual allegations. He has alleged a complete set of facts, but those facts will not support any actionable claim. It will therefore be recommended that Defendants' motions to dismiss be granted, and that this action be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

Because the action is to be dismissed on the grounds that Plaintiff has failed to state a claim on which relief can be granted, this matter will count as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).[7] However, the Court is not persuaded that Rule 11 sanctions should be imposed in this case.

A defendant may be awarded Rule 11 sanctions in a civil rights case "'only if the action was frivolous, unreasonable, or without foundation.'" Pulaski County Republican Committee v. Pulaski County Bd. of Election Commissioners, 956 F.2d 172, 173-74 (8th Cir. 1992), quoting O'Brien v. City of Greers Ferry, 873 F.2d 1115, 1120 (8th Cir. 1989). The decision to grant or deny Rule 11 sanctions is discretionary, and will therefore be reviewed only for an abuse of discretion. Id., citing Terry A. Lambert Plumbing, Inc. v. Western Security Bank, 934 F.2d 976, 985 (8th Cir. 1991). An action is "frivolous" if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Although the Court is fully satisfied that Plaintiff has failed to state any claim on which relief can be granted, the Court does not find his pleading to be "frivolous," as that term has been defined by the federal courts. Nor does the Court find Plaintiff's pleading to be "unreasonable" or "without foundation" for Rule 11 purposes.[8] It will therefore be

---

[7] Section 1915(g), by its terms, does not give the courts any discretionary authority to determine what should, or should not, count as a strike. When an action is dismissed because no actionable claim has been pleaded, (as in this case), the dismissal must automatically count as a strike.

[8] Furthermore, it appears that Defendants could have avoided most (if not all) of Plaintiff's claims, if they had exercised a little more care in their implementation of the prison industries program at issue. Defendants should have had a written agreement concerning the room and board deductions for Wisconsin prisoners before those deductions were first imposed, (not after the fact), and they should have fully informed Plaintiff about the specific amount of all deductions before he started working. Defendants also should have fully verified the reasons for Plaintiff's absences from work, before he was

recommended that the motion seeking Rule 11 sanctions be denied.

## V. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendants' respective motions to dismiss, (Docket Nos. 55 and 59), be GRANTED;

2. Defendant Jon Litscher's motion for sanctions to be imposed pursuant to Fed. R. Civ. P. 11 be DENIED;

3. Plaintiff's motions opposing Defendants' motions to dismiss, (Docket Nos. 64 and 69), be DENIED;

4. For purposes of 28 U.S.C. § 1915(g), this action be dismissed on the grounds that it fails to state a claim upon which relief may be granted; and

5. This action be DISMISSED WITH PREJUDICE.

Dated: September 23rd, 2002

ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before October 7, 2002.

---

erroneously suspended for unexcused absences that actually had been excused. Although Defendants cannot be held liable for these minor mistakes, they do tend to undermine the request for Rule 11 sanctions.